1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9    BENJAMIN NUNNES,

10            Plaintiff,                      CIV. S. 06-1620 GGH

11        vs.

12
     MICHAEL J. ASTRUE,[1]                    ORDER
13   Commissioner of Social Security,

14
              Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income

18   ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security

19   Act ("Act").  For the reasons that follow, plaintiff's Motion for Judgment on the Pleadings is

20   granted in part, and the Commissioner's Motion for Summary Judgment is denied.  The Clerk is

21   directed to enter judgment for the plaintiff.  This case is remanded for further findings pursuant

22   to sentence four of 42 U.S.C. § 405(g).

23   \\\\\

24   _____

25        [1]  Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
     should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
26   be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
     405(g).

                                          1

BACKGROUND

Plaintiff, born October 16, 1961, applied for disability benefits on June 19, 2003. (Tr. at 47, 313.)  Plaintiff alleged he was unable to work due to back and neck problems, carpal tunnel syndrome, allergies, depression and learning disorders.  (Tr. at 31, 20.)  In a decision dated October 17, 2005, ALJ Antonio Acevedo-Torres determined that plaintiff was not disabled.[2]  The ALJ made the following findings:

> 1.   The claimant met the disability insured status requirements
>      of the Act on January 1, 1999, the date the claimant stated
>      he became unable to work, and continues to meet them
>      through the current date.
>
> 2.   The claimant has not engaged in substantial gainful activity
>      since January 1, 1999.

\\\\\

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3.  The medical evidence establishes that the claimant has severe depression, chronic neck pain due to degenerative joint disease, congenital fusion of the cervical spine; chronic back pain due to mild stenosis and mild disc bulges; a disorder of written expression and math and borderline intellectual functioning, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's allegation regarding the degree of his pain and other limitations is found to be no [sic] fully credible for the reasons stated above.

5.  The claimant has the following residual functional capacity: Specifically, the claimant is able to lift 20 pounds occasionally 20 pounds frequently. [Sic] He is able to stand and walk for up to 6 hours.  Stooping and crouching is limited to occasional.  There is also a limitation to occasional reaching in the right upper extremity and the claimant is limited in manipulation and handling to occasional with both hands.  Secondary to complaints of asthma, he should be limited in his exposure to dust fumes and smoke.  The claimant is also limited to unskilled work with the restriction that he cannot perform work which requires sustained contact with the public (20 CFR §§ 404.1545 and 416.945).

6.  The claimant is unable to perform his past relevant work as logger or forest worker.

7.  The claimant is 43 years old, which is defined as a younger individual (20 CFR §§ 404.1563 and 416.963).

8.  The claimant has a 10th grade education (20 CFR §§ 404.1564 and 416.964).

9.  The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR §§ 404.1568 and 416.968).

10. Based on an exertional capacity for a wide range of light and sedentary unskilled work, and the claimant's age, education, and work experience, section 404.1569 of Regulations No. 4 and 416.969 and within the Framework of Regulations No. 16, Rules 202.17 and 201.18, Table No. 1 and 2, of Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

\\\\\

11.   The claimant's capacity for the full range of wide range [sic] of light work and sedentary work has not been significantly compromised by his additional nonexertional limitations.  Accordingly, using the framework of the above-cited rules as a framework for decision-making, the claimant is not disabled.

12.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 23-24.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether Plaintiff Meets Listing 12.05C for Mental Retardation, 12.04 for Depression, and 12.07 for Somatization Disorder at Step Three; B.  Whether the ALJ Failed to Properly Credit the Treating and Examining Physicians' Opinions; C.  Whether the ALJ Improperly Rejected Plaintiff's Symptom Testimony; and D.  Whether the ALJ Improperly Used the Medical/Vocational Guidelines.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

\\\\\

4

ANALYSIS

    A.  <u>Whether Plaintiff Meets Listing 12.05C (Mental Retardation</u>)

Plaintiff first contends that he meets Listing 12.05C.  The ALJ determined in finding no. 3 of the decision that plaintiff's impairments did not meet or equal an impairment listed in the Regulations' "Listing of Impairments" ("Listings"), which lists impairments to thirteen categories of body systems which are severe enough to preclude any gainful activity. <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  When all the requirements of a listing are met, the described condition is irrebuttably presumed disabling. <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1520(d).

At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing.  A mere *diagnosis* of a listed impairment is not sufficient.  Specific findings included in each listing also must be met.  <u>See</u>, <u>e.g.</u>, <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985).  Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. <u>See</u>, <u>e.g.</u>, <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); <u>Marcia v. Sullivan</u>, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled.  <u>Young</u>, 911 F.2d at 183.

Mental Disorders are considered in Part 12 of the Listings.  Listing 12.05 provides in part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>     The required level of severity for this disorder is met when the requirements in A, B, C, **or** D are satisfied.
> ...
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work- related limitation of function;
> ...

20 CFR § 12.05 (emphasis added).

1    "An impairment imposes a significant work-related limitation of function when its

2    effect on a claimant's ability to perform basic work activities is more than slight or minimal."

3    Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987).  This, in other words, is the definition of a

4    "severe" impairment.  Thus, in this circuit, a person who has a severe physical or other mental

5    impairment, as defined at step two of the disability analysis, apart from the decreased intellectual

6    function, meets the second prong of the § 12.05C listing.  Id.; see also Hinkle v. Apfel, 132 F.3d

7    1349, 1352 (10th Cir. 1997); Edwards v. Heckler, 736 F.2d 625, 629-31 (11th Cir.1984); Nieves

8    v. Secretary of Health & Human Servs., 775 F.2d 12, 14 & n. 7 (1st Cir.1985)).  Indeed, in

9    footnote 3 of the Fanning decision, the court found that the "extra" impairment need not even

10   reach the "severe" limit; although one might be hard pressed to call a less than "severe"

11   impairment an impairment at all.

12           In Fanning, the first prong of the listing was met because plaintiff's IQ was found

13   to be between 76 and 69.  Fanning, 827 F.2d at 633.  The court imposed a standard applicable to

14   the second prong, that the impairment must have more than a slight or minimal effect on

15   plaintiff's ability to perform basic work activities.  Id.  Because the ALJ had not considered this

16   question in regard to the plaintiff's knee injury, the court remanded the matter.  Id.

17           In the instant case, the ALJ found plaintiff to have borderline intellectual

18   functioning.  In making this finding, the ALJ noted that plaintiff's disorders of written expression

19   and math, and that plaintiff's test scores indicated a 4th grade reading level, 2nd grade spelling

20   level, and 3rd grade math level.  (Tr. at 20.)  The ALJ did not credit the statement by the physician

21   with the Department of Rehabilitation who noted evidence of possible attention deficit

22   hyperactivity disorder as there were no further records to support this diagnosis.  (Id. at 21.)  The

23   ALJ then stated that he took plaintiff's disorders into account in determining that he could do

24   \\\\\

25   \\\\\

26   \\\\\

6

1   unskilled work with no sustained contact with the public.  (Id.)  The ALJ evaluated plaintiff's

2   limitations using the "D" criteria of listing 12.05.[3]  (Id. at 20.)

3             Defendant argues that plaintiff has not established onset before age 22.  The

4   evidence to support plaintiff's claim that he suffered from borderline intellectual functioning

5   prior to age 22 is his own testimony and statements to medical professionals.  Plaintiff testified

6   that he was in special education classes all his life.  (Tr. at 329.)  He reported to Dr. Schmidt that

7   he made it to tenth grade only, and then dropped out of school.  (Id. at 155.)  Plaintiff's testimony

8   is consistent with the medical evidence of his current I.Q. which is 66 in verbal performance.[4]

9   (Tr. at 156.)  The ALJ assumed without discussion that plaintiff met the onset date prerequisite as

10  he focused his analysis on the D criteria only.  Therefore, his assumption regarding onset date

11  will not be disturbed.  The ALJ then discussed part D of the listing, and found that plaintiff did

12  not satisfy the criteria, of which two are required.  The ALJ did not address part C of the listing.

13  This part requires, in addition to an I.Q. of between 60 and 70, a "physical or mental impairment

14  imposing an additional and significant work-related limitation of function."  The ALJ did

15  acknowledge that plaintiff had depression, a disorder of written expression, a mathematics

16  disorder, borderline intellectual functioning, chronic neck pain due to degenerative joint disease,

17  congenital fusion of the cervical spine, and chronic back pain due to mild stenosis and mild disc

18  bulges.  (Tr. at 20.)  The ALJ did not, however, analyze whether any of these impairments

19  constituted an impairment which might meet the second part of part C of this listing.  It is true

20  that the ALJ is under no duty to specifically address why a plaintiff fails to satisfy every listing,

21  Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir.1990).  Nevertheless, where a listing is

22  clearly relevant to a plaintiff's alleged disability, the ALJ should analyze every part of that listing

23

24        [3]  The ALJ incorrectly refers to the "B" criteria in regard to listing 12.05C; however, the
      pertinent criteria are listed in part "D" of this listing.

25

26        [4]  Plaintiff's performance I.Q. is 86, and full scale I.Q. is 74; however, the listing permits
      any one of these to be between 60 and 70.

1    which might apply.  Therefore, the case will be remanded for further analysis of this listing.

2        B.  Plaintiff Does Not Meet or Equal Any Other Listings

3          Plaintiff asserts that he equals listings 12.07 and 12.04; however, his argument is

4    focused on meeting these listings rather than equaling them.  In fact, he points to no evidence

5    showing that these listings might be equaled.  Therefore, the discussion will focus on whether

6    plaintiff meets either of these listings.

7         1.  Listing 12.07 (Somatization Disorder)

8          Somatoform disorder is defined generally as "[p]hysical symptoms for which

9    there are no demonstrable organic findings or known physiological mechanisms."  20 C.F.R. Pt.

10   404, Subpt. P, App. 1, § 12.07.  The only physician to reference somatization disorder was Dr.

11   Durbrow.  He qualified his impression by stating, "he seems to have characteristics of

12   Somatization disorder...."  (Tr. at 163.)  A somatoform disorder of listing severity requires a

13   definitive medical diagnosis – a diagnosis which is not present here by Dr. Durbrow's vague

14   reference.  An ALJ may not utilize his lay knowledge of symptoms to arrive at this diagnosis.

15          Even if this statement could be construed as a diagnosis, this disorder requires that

16   both A and B criteria are met.  Plaintiff focuses only on the B criteria, and does not address why

17   he should meet the A criteria.  Determining which of the A criteria plaintiff arguably meets is an

18   inappropriate task for the court to undertake in the first instance on review.

19          Nevertheless, under the A criteria, plaintiff must first show medically documented

20   evidence of either 1. multiple physical symptoms beginning before age 30; or 2. persistent

21   disturbance of either vision, speech, hearing, use of a limb or movement, or sensation; or 3.

22   "unrealistic interpretation of physical signs or sensations associated with the preoccupation or

23   belief that one has a serious disease or injury."

24          Defendant argues that plaintiff has not shown onset by age 30; however, this

25   requirement is in the disjunctive.  Plaintiff is not required to establish an onset date if he can

26   alternatively show that part 2 or 3 of subsection A is met.  Plaintiff has not established any of the

1  three criteria required by part A.  In his discussion regarding the weight given treating source

2  opinions, plaintiff mentions the A criteria in passing.  Pl.'s Mot. at 17.  He states that he reported

3  to his doctors that he suffers from injuries incurred at age 3.  Plaintiff does not cite to the record

4  in support of this statement.  Plaintiff adds that he has seen several doctors to determine the cause

5  of his pain, but none can adequately explain the origin.  Plaintiff argues that for these reasons, he

6  meets the A criteria.  These assertions are not sufficient.

7  An ALJ need not discuss separately each of several listings which might apply to

8  a case.  The ALJ is under no duty to specifically "state why a claimant failed to satisfy every

9  different section of the listing of impairments," Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th

10  Cir.1990), especially if the findings he does make would be dispositive in any event.  The

11  regulations merely require the Commissioner to "review the symptoms," 20 C.F.R. § 404.1526,

12  and make specific findings essential to the conclusion.  Gonzalez, 914 F.2d at 1200.  This the

13  ALJ did.  The ALJ discussed the B and D Criteria in regard to listings 12.04 and 12.05

14  respectively, which is the same for somatoform disorders and requires two of the following:

15  Listing 12.04(B) requires at least two of the following functional limitations:

16  1.  marked restriction of activities of daily living;

17  2.  marked difficulties in maintaining social functioning;

18  3. deficiencies of concentration, persistence or pace resulting in
    frequent failure to complete tasks in a timely manner (in work
19  settings or elsewhere); or

20  4. repeated episodes of deterioration or decompensation in work or
    work-like settings which cause the individual to withdraw from
21  that situation or to experience exacerbation of signs and symptoms.

22  "Marked" means "more than moderate, but less than extreme."  See Listing12.00(C).

23  The record does not reflect repeated episodes of deterioration or decompensation

24  in a work setting.  The ALJ found that plaintiff had only moderate limitations in activities of

25  daily living, maintaining social functioning and maintaining concentration persistence or pace.

26  (Tr. at 20.)  In fact, he specifically noted that no opinion of any treating source found that

1    plaintiff had any limitations in any of these areas which would be consistent with marked

2    limitations.  (Id.)

3              The evidence bears out the ALJ's analysis.  Dr. Durbrow was not a specialist in

4    psychiatry, but only a family practitioner, and other psychiatrists of record did not diagnose

5    somatization disorder.  See Lombardo v. Schweiker, 749 F.2d 565, 566 (9th Cir. 1984) (noting

6    opinion of specialist may be entitled to more weight than that of general practitioner).

7              Even Dr. Whitten, whom the ALJ rejects, (see discussion infra), did not find

8    marked limitations.  This consulting psychiatrist found that although plaintiff had pain disorder

9    and major depression in partial remission, he was functional to a certain extent.

> He is able to perform simple and repetitive tasks.  He is able to
> accept instructions from supervisors, but he *may* not be tolerant of
> customers.  He is able to interact with co-workers without being
> sidetracked or distracted.  He *may* have difficulties performing
> work activities on a consistent basis.  He is able to maintain regular
> attendance.  He *may* have difficulty completing a workweek
> without interruptions from psychiatric symptoms.  He *may* have
> difficulty dealing with the usual stresses encountered in a
> competitive work environment. .... Although the claimant appears
> to be primarily limited by his physical problems, it does appear that
> his depression and pain disorder *may* have a mild to moderate
> impact on his ability to carry out those activities and
> responsibilities required for those jobs he has been suited for in the
> past.

18   (Tr. at 264-65.) (emphasis added.)

19             Clearly, this psychiatrist was qualified and uncertain in his opinion by virtue of his

20   constant use of the term, "may," and in no way found plaintiff to have marked limitations.  Dr.

21   Schmidt, a psychologist, did not diagnose somatization disorder and did not find marked

22   limitations.  Instead, she diagnosed disorder of written expression; mathematics disorder;

23   attention deficit hyperactivity disorder; major depression, moderate, without psychotic features;

24   and borderline intellectual functioning.  (Tr. at 158.)  She opined that plaintiff did not have

25   significant difficulties in attention, concentration, and short term memory, as he had reported, but

26   that he did have some limitations which *may* interfere with his ability to perform some tasks.  (Id.

10

at 159.) (emphasis added.)  Dr. Schmidt also indicated that there was no evidence plaintiff would not be socially appropriate in a work setting with peers or supervisors.  He could deal well with frustrations and would not become emotionally inappropriate.  (Id.)

The evaluations by the DDS reviewers indicate no marked limitations whatsoever in any of the categories, including understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (Tr. at 266-67.)  Limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace were moderate.  There was insufficient evidence of any episodes of decompensation, which is the fourth criteria of part B of listing 12.07.  (Tr. at 280.)

The ALJ properly analyzed the opinion of Dr. Durbrow, (see discussion infra), and was not required to consider his diagnosis of somatization disorder.  When a treating physician's opinion is contradicted by the opinion of an examining physican whose independent clinical findings differ from those of the treating physician, it is then solely the province of the ALJ to resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).  In this case, the ALJ was not required to accept Dr. Durbrow's contradicted diagnosis of somatization disorder.

2.  Listing 12.04 (Depression)

The ALJ found plaintiff's depression to be a severe impairment, but that it did not meet the listing.  (Tr. at 20.)  Listing 12.04 deals with "Affective Disorders."  The Listing is comprised of three parts, labeled  "A," "B," and "C."  Both parts A and B of the listing must be met or equaled.  Alternatively, Part C must be met or equaled.  The Part A criteria determine whether evidence of a depressive disorder is present.  20 C.F.R. Part 404, Subpt.  P, App.  12.04(A).  The Part B criteria evaluate the functional loss resulting from a depressive disorder.  See, e.g., Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 616 (10th Cir. 1995).  Part C criteria requires a medically documented history of chronic affective disorder lasting at least two years.  The ALJ found plaintiff met the "A" criteria, and this finding is not in question.

11

1   The "B" criteria are the same as required for listing 12.07, as set forth in the previous section,

2   and at least two limitations must be found.

3          Paragraph C requires demonstration of one of the following: (1) repeated and

4   extended episodes of decompensation; (2) a residual disease process that has resulted in such

5   marginal adjustment that even a minimal increase in mental demands or change in the

6   environment would be predicted to cause the individual to decompensate; or (3) current history

7   of 1 or more years' inability to function outside a highly supportive living arrangement, with an

8   indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §

9   12.04(C)(1)-(3).

10         As in regard to listing 12.07, plaintiff focuses his discussion on the B criteria.  For

11  all the reasons stated above in regard to these criteria, which are the same for both affective

12  disorders and somatoform disorders, the evidence supports the ALJ's finding that plaintiff did

13  not meet any of these criteria.  In the alternative, plaintiff can attempt to show that he meets the

14  criteria of part C; however, plaintiff does not discuss part C.  Therefore, he has not met his

15  burden in this regard.

16         In sum, the ALJ's finding that plaintiff did not meet or equal the 12.04 and 12.07

17  listings is based on the proper legal standards and is supported by substantial evidence in the

18  record.

19      C.  <u>Whether the ALJ Failed to Give Appropriate Weight to the Opinions of Drs. Durbrow</u>

20  <u>and Whitten</u>

21         Plaintiff contends that the ALJ did not give specific or legitimate reasons to reject

22  the opinion of plaintiff's treating physician, Dr. Durbrow, or consulting psychiatrist, Dr. Whitten.

23          The weight given to medical opinions depends in part on whether they are

24  proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246

25  \\\\\

26  \\\\\

F.3d 1195, 1201 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[5]  Ordinarily,

more weight is given to the opinion of a treating professional, who has a greater opportunity to

know and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th

Cir. 1996).

        To evaluate whether an ALJ properly rejected a medical opinion, in addition to

considering its source, the court considers whether (1) contradictory opinions are in the record;

and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

a treating or examining medical professional only for *"clear and convincing"* reasons.  <u>Lester</u> ,

81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

be rejected for *"specific and legitimate"* reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating

professional's opinion generally is accorded superior weight, if it is contradicted by a supported

examining professional's opinion (supported by different independent clinical findings), the ALJ

may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

<u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir.

 2001),[6] except that the ALJ in any event need not give it any weight if it is conclusory and

supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999)

(treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>,

881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

---

[5]  The regulations differentiate between opinions from "acceptable medical sources" and "other sources."  <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources."  <u>Id.</u>  Medical opinions from "acceptable medical sources," have the same status when assessing weight.  <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific regulations exist  for weighing opinions from "other sources."  Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

[6]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1   insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

2           Plaintiff claims that the ALJ did not acknowledge Dr. Durbrow's opinion.  In fact,

3   the ALJ summarized the opinions of record, including that of Dr. Durbrow.  He noted, however,

4   that although this treating doctor saw plaintiff most recently in January, 2004, he did not

5   complete a real physical exam.  (Tr. at 16.)  He also discounted Durbrow's records submitted

6   after the hearing because although they reflected six visits in 2004 for various complaints,

7   plaintiff was seeking pain medications, and the records did not show any objective medical

8   findings, but only reflected plaintiff's subjective complaints.  (Id. at 17.)  The ALJ added that he

9   was relying on Dr. Jordan's opinion as the most recent one, and that this doctor had the benefit of

10  being able to review all past medical records as well as conduct her own exam.  He also

11  explained that no treating opinion contradicted Dr. Jordan's assessment.  (Id. at 21.)

12          Dr. Durbrow, as discussed in the previous section, opined that plaintiff had

13  somatization disorder.  For the reasons discussed *supra*, that diagnosis was properly rejected.  On

14  January 23, 2004, this general practitioner also diagnosed mild central canal stenosis at L2-3 and

15  L3-4, and narrowing of the disc spaces at C3-4, and T11-12, based on x-rays.  Dr. Durbrow did

16  not think plaintiff had neurological impairment, however.  Although there was evidence of

17  bilateral carpal tunnel syndrome, this physician did not think it required neurological

18  intervention.  Plaintiff also had congenital fusion of posterior arches of C1 and C2, and only four

19  fully formed lumbar vertebrae.  He added that plaintiff's IQ was 74, with verbal score at 66 and

20  performance score at 86.  (Tr. at 162.)  Dr. Durbrow acknowledged Dr. Schmidt's diagnoses of

21  "disorder of written expression, mathematical disorder, ADD-inattention type, major depression,

22  psychosocial and environmental problems, moderate to severe."  Dr. Durbrow concluded by

23  questioning whether plaintiff had ever been able to perform well in any work situation, and

24  questioned whether he could in future.  (Id. at 163.)  Dr. Durbrow most recently diagnosed "knee,

25  back pain, chr[onic] pessimism" on August 3, 2004.  (Tr. at 311.)  These most recent records are

26  not helpful, and as stated by the ALJ, mainly contain plaintiff's subjective complaints, and do not

14

reflect a physical exam. (Id. at 310-12, 162-63.)

In regard to plaintiff's mental impairments, the ALJ relied on Dr. Schmidt's findings of disorder of written expression, math disorder, and borderline intellectual functioning, which was consistent with Dr. Durbrow's opinion. (Tr. at 21.)  The ALJ did not agree with her finding of possible attention deficit hyperactivity disorder as there were no other medical records supporting this diagnosis. (Id.)  It was proper for the ALJ to disagree with the ADHD finding as well as Dr. Durbrow's finding of somatization disorder.  As the ALJ did not reject the opinion of Dr. Durbrow, he was not required to articulate reasons to explain his decision.  "It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989), *citing* Russell v. Bowen, 856 F.2d 81, 83 (9th Cir.1988) (citation omitted).

The ALJ also did not reject Dr. Durbrow's findings in regard to plaintiff's physical impairments.  He merely noted that Dr. Jordan's assessment was the most recent and up to date, and that it did not conflict with any treating opinion.  (Tr. at 21.)  It is within the ALJ's province to chose to rely on one report over another.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995), citing Magallanes, 881 F.2d at 751.  Dr. Jordan performed a neurological evaluation of plaintiff on April 23, 2005.  She opined that plaintiff could lift and carry ten pounds frequently and 20 pounds occasionally.  He could stand and walk for six hours with customary breaks.  He could sit for six hours.  He could occasionally bend, stoop, and crouch.  He could do only occasional reaching with the right upper extremity due to right shoulder limitations.  He could do manipulation and handling only occasionally, and was limited in feeling with either hand.  (Tr. at 303.)  These limitations are consistent with the aforementioned cervical, thoracic and lumbar findings of Dr. Durbrow.  A radiology report from May, 2003 indicated only disc narrowing and degenerative disk disease at the T11-12 level.  (Tr. at 181.)  There was no impingement, no significant central canal narrowing, bulging or herniation of the discs.  A CT scan of the cervical spine on May 5, 2003 showed only mild degenerative changes of the facet

1    joint at C3-4; however, a more recent report, dated July 24, 2003, indicated a normal cervical

2    spine.  (Tr. at 183, 214.)  A CT scan of the lumbar spine in May, 2003 showed disc bulge at L3-4

3    and L4-S1.  There was mild central canal stenosis.[7]  (Id. at 182.)  The degree of physical

4    functioning assessed by Dr. Jordan is consistent with these objective studies.

5            In regard to plaintiff's reference to Dr. Durbrow's opinion that plaintiff is

6    unemployable, or nearly so, such an opinion is not binding on this court.  "A statement by any

7    physician that the claimant is disabled or unable to work is a conclusion on the ultimate issue to

8    be decided . . . and is not binding on the [ALJ] in reaching his determination as to whether the

9    claimant is disabled within the meaning of the [Act]."  Murray v. Heckler, 722 F.2d 499 (9th Cir.

10   1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), 20 C.F.R. §§ 404.1527 and

11   404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th Cir. 1989).

12           Plaintiff also objects to the ALJ's treatment of Dr. Whitten's opinion.  The ALJ

13   specifically noted that this consulting psychiatrist's opinion was given in October, 2003 and

14   medical records after that time indicate an improvement in psychiatric symptoms.  (Tr. at 21.)

15   The ALJ does not appear to have rejected it, however, but appears to have considered it in

16   conjunction with Dr. Schmidt's report.  As a result, the ALJ limited plaintiff to unskilled work

17   which by its very nature involves dealing with objects rather than people, and to work which did

18   not require sustained contact with the public.  (Id. at 21, 24.)

19           As discussed in the previous section, Dr. Whitten's opinion was conditional in its

20   use of the term "may" in regard to plaintiff's limitations.  He did not find marked limitations, in

21   any event, but opined that plaintiff had only mild to moderate limitations from the depression and

22   pain disorder.  (Id. at 265.)  The court does have trouble with the ALJ's rationale that Dr.

23   Whitten's report of October, 2003 was followed by more recent medical records indicating

24   improvement with treatment.  (Tr. at 21.)  The ALJ does not cite to such records, and the only

25   _____

26        [7] Much of this report is unreadable.

1   record that defendant can point to is plaintiff's general statement in November, 2004 that he was

2   "feeling better in general." (Tr. at 286.)  In January, 2004, plaintiff stated, "I've got so many

3   issues going on it's hard to tell about the Prozac." (Id. at 168.)  On the other hand, progress notes

4   between May 25 and August 25, 2004, do not reflect complaints that Prozac was not working

5   despite plaintiff's complaints on a variety of other subjects. (Tr. at 310-12.)  Although the ALJ's

6   reasoning in this regard is lacking support in the record, his reliance on the opinions of  Drs.

7   Whitten and Schmidt is supported by substantial evidence.

8          The court does not find that the ALJ rejected Dr. Whitten's opinion, but that he

9   considered it along with Dr. Schmidt's opinion, and the mild to moderate mental limitations

10   assessed by the DDS reviewers. (Tr. at 266-83.)  He then properly limited plaintiff to unskilled

11   work which involved limited contact with the public.

12         D.  The ALJ Properly Considered Plaintiff's Symptom Testimony

13          Plaintiff claims that the ALJ discredited plaintiff's testimony solely on the basis of

14   lack of objective evidence and therefore erred.

15          The ALJ determines whether a disability applicant is credible, and the court defers

16   to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater,

17   94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

18   credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

19   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

20   supported by "a specific, cogent reason for the disbelief").

21          In evaluating whether subjective complaints are credible, the ALJ should first

22   consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947

23   F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

24   solely because objective medical evidence does not quantify them. Id. at 345-46.  If the record

25   contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

26   then considers the nature of the alleged symptoms, including aggravating factors, medication,

1   treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

2   applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

3   inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

4   and (3) daily activities.[8]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

5   SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

6   and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

7   between testimony and conduct, may also be relevant.  Light v. Social Security Administration,

8   119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

9   see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

10  medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

11  affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

12  must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,

13  599 (9th Cir. 1999).

14           Here, the ALJ found plaintiff to be not substantially credible because his

15  complaints were not proportional to the weight of the objective evidence.  The ALJ noted,

16           Clearly, if the undersigned were to find the testimony of the
             claimant to be credible, a finding of disability would be directed.
17           However, the claimant's subjective complaints, standing alone, do
             not provide a basis to find 'disability,' and the undersigned finds
18           that the objective medical evidence, including records from the
             claimant's treating physician, do not support the degree of fatigue,
19           pain, side effects from medications, and other limitations as alleged
             by the claimant.
20
             While the undersigned gives some weight to the claimant's
21           allegations of pain and limitations due to depression, the
             undersigned finds that the record as a whole does not support the
22           degree of limitations alleged by the claimant.

23

24           [8]  Daily activities which consume a substantial part of an applicants day are relevant.
        "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25      activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
        any way detract from her credibility as to her overall disability.  One does not need to be utterly
26      incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
        (quotation and citation omitted).

1  (Tr. at 22.)

2      Although the ALJ did not further discuss his other reasons for rejecting plaintiff's

3  symptom testimony in that section of the opinion, he elsewhere explained that plaintiff's physical

4  impairments did not result in motor loss, reflex changes, neurological deficits or a significant

5  degree of functional loss.  (Tr. at 20.)  He also noted that plaintiff was receiving treatment for his

6  depression in the form of both medication and counseling.  (Id.)  He further referred to plaintiff's

7  testimony indicating he was independent in most activities of daily living despite the alleged pain

8  and mental impairments.  He added that plaintiff had not reported any difficulties in social

9  functioning.  (Id.)

10     Plaintiff's testimony was that he could only stand for one to five minutes at a

11  time, and sit for only half an hour at a time.  (Tr. at 326.)  This degree of limitation is far out of

12  proportion to the objective findings noted in the previous section, which included only mild disc

13  narrowing in the thoracic spine, a normal cervical spine with no significant degenerative changes,

14  and only mild disc bulging and mild central canal stenosis in the lumbar spine.  (Tr. at 181, 183,

15  182, 214.)  Medical records note that plaintiff did not need an assistive device to walk, surgery

16  was not recommended, and there are only two visits to physical therapy in the records, despite

17  plaintiff's having been sent for six weeks of therapy.  (Id. at 303, 300, 169, 218, 166, 172.)

18  Although plaintiff did wear a back brace, he reported that it "helps enormously."  (Tr. at 171.)

19     Plaintiff's alleged pain level of 8 on a scale of 1 to 10 is also out of proportion to

20  these objective findings.  He testified that when he takes medication, the lowest level of pain all

21  day is 8.  (Id. at 327.)  Despite this alleged pain and limitations, plaintiff testified that he takes

22  care of his own personal needs, makes phone calls, has a hobby building models which he does

23  daily, prepares one meal a day, does housework twice a month, and laundry once a month.  (Id. at

24  327-28.)

25     Plaintiff also testified that he has been taking Prozac for depression for about a

26  year.  (Tr. at 330.)  Presumably if this medication did not work, he would not have been taking it

1  all that time.  There is also evidence that plaintiff was seeking pain medication.  For example, an

2  undated note at Miners Medical Clinic, stated that plaintiff wanted pain medications but was

3  refused by the medical practitioner.  He was told to take Naprosyn instead.  (Tr. at 190.)

4        A telling comment was made by Dr. Durbrow in his letter opining that plaintiff

5  was unemployable.  He stated, "it is nearly impossible to evaluate his capabilities physically,

6  when his efforts are directed toward proving to me that he cannot stand or sit for more than five

7  minutes, and he is unable to move a heavy book (The PDR) more than a few feet."  (Tr. at 162.)

8        The court finds that the ALJ's credibility assessment, although deficient in its

9  completeness, was ultimately supported by the record.

10        E.  <u>The ALJ Should Have Used the Testimony of a Vocational Expert</u>

11        Plaintiff contends that the ALJ should have utilized a vocational expert based on

12  his mental limitations (severe depression, disorder of written expression, math disorder, and

13  borderline intellectual functioning), as well as postural and manipulative limitations and

14  environmental restrictions.

15        The Guidelines in table form ("grids") are combinations of residual functional

16  capacity, age, education, and work experience.  At the fifth step of the sequential analysis, the

17  grids determine if other work is available.  <u>See generally</u> <u>Desrosiers v. Secretary of Health and</u>

18  <u>Human Services</u>, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

19        The grids may be used if a claimant has both exertional and nonexertional

20  limitations, so long as the nonexertional limitations do not significantly impact the exertional

21  capabilities.[9]  <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>,

22

23      [9]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;

24  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect

25  the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; <u>Cooper</u>, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has

26  an impairment that limits his or her ability to work without directly affecting his or her strength,

1   Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  See Desrosiers, 846 F.2d at 577

2   ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude

3   application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ

4   must weigh the evidence with respect to work experience, education, and psychological and

5   physical impairments to determine whether a nonexertional limitation significantly limits

6   plaintiff's ability to work in a certain category.  Desrosiers 846 F.2d at 578 (Pregerson, J.,

7   concurring).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's

8   functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines

9   would be inapplicable."  Desrosiers, 846 F.2d at 577-78.  The ALJ is then required to use a

10  vocational expert. Aukland v. Massanari, 257  F. 3d 1033 (9th Cir. 2001).

11          In this case, the ALJ found that plaintiff could do a wide range of light and

12  sedentary unskilled work with the following limitations:

13          Stooping and crouching is limited to occasional.  There is also a
            limitation to occasional reaching in the right upper extremity and
14          the claimant is limited in manipulation and handling to occasional
            with both hands.  Secondary to complaints of asthma, he should be
15          limited in his exposure to dust fumes and smoke.  The claimant is
            also limited to unskilled work with the restriction that he cannot
16          perform work which requires sustained contact with the public.

17  (Tr. at 24.)

18          As a result, the ALJ found that plaintiff could not perform his past work as a

19  logger or forest worker, but he could do unskilled work, and under Rules 202.17 and 201.18, he

20  was not disabled.  (Id.)  The ALJ found that plaintiff's capacity for a wide range of light and

21  sedentary unskilled work was not significantly compromised by his nonexertional limitations.

22  (Id.)

23          Impairments which affect the mind, and limitations such as crouching, stooping

24  and reaching are nonexertional in nature.  SSR 83-10, *6.  By specifically limiting their

25

26  the claimant is said to have nonexertional (not strength-related) limitations that are not covered
    by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

directives to one type of situation, the Social Security Rulings applicable here seem to indicate that if a claimant has only one nonexertional impairment, the occupational base is not eroded. By reverse implication, more than one nonexertional impairment may very well significantly impact the occupational base. For example, SSR 85-15 states that where balancing (and climbing) is the *only* limitation, it would not usually significantly impact the world of work; however, certain light jobs would be ruled out, such as construction painter. (Id. at *6.) (emphasis added.) This ruling also states that occasional stooping leaves the light work base intact. (Id. at *7.) See also SSR 83-10 (noting that majority of light work jobs can be done with occasional rather than frequent stooping). SSR 85-15 does not address the situation here, where plaintiff has limitations on stooping *and* crouching *and* reaching *and* manipulation *and* handling *and* exposure to dust fumes and smoke, in addition to his other limitations. The same ruling separately addresses reaching, which is required in almost all jobs. "Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations." (Id. at *7.)

SSR 83-14 advises that although a particular nonexertional limitation may have very little effect on the range of work, an *additional* nonexertional limitation may so reduce the range of work that the claimant may be found disabled. (Id. at *3.) This ruling advises the use of a vocational expert in more complex situations. The ruling gives examples of limitations which do and do not require vocational testimony. Because light work usually requires occasional stooping (no more than one third of the work day), any limitation on this ability must be considered very carefully for a determination of its impact on the remaining occupational base of light work. (Id. at *4.) On the other hand, inability to ascend and descend scaffolding, or environmental restrictions, will not significantly affect the unskilled light work base. Where restrictions are between these two examples, the ALJ will usually require vocational expertise. (Id. at *5.) The limitation on crouching and overhead reaching on the right side as found in this

1  case, fall into the same category as stooping in that they may erode the occupational base.  (Id. at

2  *4-5.)  Mental impairments, although more likely to affect skilled work, must also be considered.

3  (Id. at *2.)  Plaintiff has not just one but several nonexertional limitations.

4          Although plaintiff is limited to unskilled work involving no sustained contact with

5  the public, which taken alone may not erode the occupational base for light work, these

6  nonexertional impairments may also affect the light work base when considered with the other

7  limitations.

8          SSR 85-15 states:

9          The basic mental demands of competitive, remunerative, unskilled
           work include the abilities (on a sustained basis) to understand,
10         carry out, and remember simple instructions; to respond
           appropriately to supervision, coworkers, and usual work situations;
11         and to deal with changes in a routine work setting.  A substantial
           loss of ability to meet any of these basic work-related activities
12         would severely limit the potential occupational base.

13         A severe impairment at step two does not automatically lead to a conclusion that

14  step five requirements are satisfied.  See  Hoopai v. Astrue, ___ F.3d ___, 2007 WL 2410178, *3

15  (9th Cir. August 27, 2007) ("[t]he step two and step five determinations require different levels of

16  severity of limitations such that the satisfaction of the requirements at step two does not

17  automatically lead to the conclusion that the claimant has satisfied the requirements at step

18  five").  At step five, vocational testimony is only required where non-exertional limitation is

19  "sufficiently severe" to limit a range of work.  Id.  Nevertheless, if the nonexertional impairment

20  reduces the residual functional capacity, use of the grids is inappropriate.  In this case, although

21  the mental limitations set forth by the ALJ alone do not appear to reduce plaintiff's residual

22  functional capacity, when taken in combination with plaintiff's crouching, stooping, overhead

23  reaching with the right upper extremity, manipulation, handling, and environmental limitations,

24  they may affect the occupational base for light and sedentary unskilled work.

25         Because plaintiff's numerous restrictions may, taken together, have a significant

26  impact on his ability to do a wide range of light or sedentary work, and because the record

1  contains no information whether plaintiff's nonexertional impairments significantly limit the

2  range of jobs available to him, reliance on the grids was improper.  The ALJ should have

3  consulted a vocational expert to evaluate the impact of plaintiff's limitations on his ability to

4  work.  The case will also be remanded for this reason.  On remand, the vocational expert shall

5  determine what work plaintiff can do with his limitations, and whether there are significant

6  numbers of jobs in the national economy.  This remand should in no way be construed as an

7  opinion that plaintiff is disabled.

8  <u>CONCLUSION</u>

9       Accordingly, the court finds the ALJ's assessment is not fully supported by

10  substantial evidence in the record or based on the proper legal standards.  IT IS HEREBY

11  ORDERED that:  Plaintiff's Motion for Summary Judgment or Remand is granted in part, the

12  Commissioner's Cross Motion for Summary Judgment is denied, and the Clerk is directed to

13  enter judgment for the plaintiff.  This case is remanded for further findings pursuant to sentence

14  four of 42 U.S.C. § 405(g).

15  DATED: 9/28/07

16                                              /s/ Gregory G. Hollows
                                              _____
17                                              GREGORY G. HOLLOWS
                                              U.S. MAGISTRATE JUDGE
18  GGH/076
    Nunnes1620.ss.wpd

19

20

21

22

23

24

25

26